NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

July 9, 2025

John J. Bowers
Andrew McFall
Edward Reilly, II
James Patrick Connor
United States Securities & Exchange Commission
100 F Street Northeast
Washington, DC 20549
*Counsel for Plaintiff*

Edward Anthony Velky
Frank J. Cuccio
Bressler, Amery & Ross, P.C.
325 Columbia Turnpike
Florham Park, NJ 07932
*Counsel for Defendant*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

  Re: *United States Securities and Exchange Commission v. Suyun Gu*
     **Civil Action No. 21-17578 (SDW) (AME)**

Counsel:

  Before this Court is a motion for permanent injunction and entry of final judgment filed by Plaintiff United States Securities and Exchange Commission (the "SEC"). (D.E. 90.) This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court having considered the parties' submissions, and for the reasons stated herein, the SEC's motion is **GRANTED**.

**BACKGROUND & PROCEDURAL HISTORY**

  The parties are presumed to be familiar with this case and may refer to this Court's September 6, 2024 opinion granting the SEC summary judgment (D.E. 84 ("MSJ Op.")) for a more detailed summary of the factual background. In short, the SEC sued Defendant Suyun Gu for making several securities transactions in which he was both the seller and buyer, known as "wash trades." (*Id.* at 2.) The wash trades themselves did not generate any profit, but they allowed him to obtain approximately $1.4 million in liquidity rebates offered by stock exchanges. (*Id.* at 3.)

Mr. Gu executed over 11,000 trades between February 19 and April 15, 2021. (*Id.*) His net profit, after commissions and fees, was $621,703. (*Id.*)

Mr. Gu used retail broker-dealer companies to trade securities. (*Id.* at 4 & n.7.) He used some accounts in his own name, and some that were nominally owned by others, including his father, his employee Kemar Channer, and his friend Luke Wechselberger. (*Id.* at 4, 6–8.) When applying for or using the accounts, Mr. Gu falsely inflated his and others' experience in options trading. (*Id.*) When using accounts owned by others, Mr. Gu also used a private server to disguise the IP address associated with the activity. (*Id.* at 7–8.)

Mr. Gu also concealed the nature of his activity from the trading platforms. Multiple platforms asked him about his trading strategy or if he knew the counterparty to his trades. (*Id.* at 5–6.) He did not tell the platforms that he was trading with himself or seeking to profit from liquidity rebates because he feared his accounts would be closed or not restored. (*Id.* at 5–7.) At least three accounts that Mr. Gu used were closed or suspended by the platforms. (*Id.*)

Mr. Gu also instructed his friend, employee, and former co-Defendant Yong Lee[1] to open an account on a trading platform and falsely inflate his options trading experience. (*Id.* at 4.) When Mr. Lee's account was suspended on March 4, 2021, Mr. Lee sent Mr. Gu a link to a Wikipedia page defining a wash trade as "a form of market manipulation in which an investor simultaneously sells and buys the same financial instruments to create misleading, artificial activity in the marketplace." (*Id.* at 5 (citing D.E. 83-1 ¶ 94).)

The operative complaint alleges violations of § 17(a)(1) and (2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1) and (2); violations of § 10(b) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), as well as Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5; and violations of § 9(a)(1) of the Exchange Act, 15 U.S.C. § 78i(a)(1). (D.E. 44 ¶¶ 71–79.) The SEC moved for summary judgment, which this Court granted on September 6, 2024. (MSJ Op.; D.E. 85.) The SEC filed the present motion for permanent injunction and entry of final judgment on December 6, 2024. (D.E. 90.) Mr. Gu opposed (D.E. 93 ("Opp.")), and the SEC replied (D.E. 94).

**STANDARD OF REVIEW**

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies …." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). Possible remedies include injunctions from further violations, disgorgement with prejudgment interest, and civil penalties, 15 U.S.C. §§ 77t, 78u(d); *SEC v. Teo*, 746 F.3d 90, 109–10 (3d Cir. 2014); *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085, 1089–90 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d Cir. 1997).

For violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" that "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons," civil penalties may be imposed in an amount up to the gross pecuniary gain resulting from the securities laws violations. 15 U.S.C. §§

---

[1] Mr. Lee consented to judgment against him, which was entered on September 29, 2021. (D.E. 5.)

77t(d)(2)(C); 78u(d)(3)(B)(iii); *SEC v. Desai*, 145 F. Supp. 3d 329, 339 (D.N.J. 2015). To determine the amount of civil penalties to impose, courts look to

> (1) the egregiousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) the defendant's failure to admit to his wrongdoing; (5) whether the defendant's misconduct created substantial losses or the risk of substantial losses to others; and (6) the defendant's lack of cooperation and honesty with authorities.

*SEC v. Fierro*, Civ. No. 20-2104, 2024 WL 2292054, at *7 (D.N.J. May 21, 2024) (quoting *SEC v. Johnson*, Civ. No. 02-5490, 2004 WL 5561799, at *5 (D.N.J. Aug. 27, 2004), *aff'd as modified*, 174 F. App'x 111 (3d Cir. 2006)). Civil penalties are "intended to both punish and serve as a deterrent mechanism." *Desai*, 145 F. Supp. 3d at 338.

**DISCUSSION**

The SEC seeks an injunction, disgorgement, prejudgment interest, and a civil penalty against Mr. Gu. (D.E. 90 at 1.) Mr. Gu opposes only the request for a civil penalty. (Opp. at 1.) Seeing no issues with the SEC's first three requested remedies, this Court will not examine them in detail but rather focus on the disputed matter of whether a penalty should be imposed. The SEC requests a civil penalty in the amount of Mr. Gu's net ill-gotten gains, $621,703. (D.E. 90 at 1.) As laid out below, upon examination of the appropriate factors above,[2] Mr. Gu's conduct and the findings in this Court's summary judgment opinion support imposing the requested civil penalty.

### A. Egregiousness, Scienter, and Repetitiveness

Three factors in the civil penalty analysis are related and satisfied by overlapping facts in this case: scienter, egregiousness, and the repeated nature of the violations. This Court already determined at summary judgment that Mr. Gu acted with scienter. (MSJ Op. at 12–14 (finding that either a standard of recklessness or specific intent was satisfied), 19–20.) This conclusion was based on Mr. Gu's knowledge that his trades would not be profitable absent liquidity rebates, his admission that he acted with the purpose of profiting off of the rebates, his choice to trade options unattractive to other market participants to ensure that he would trade only with himself, his use of "test trades" to ensure his plan would work, and his use of several different trading platforms. (*Id.* at 13.) This Court also considered that Mr. Gu repeatedly misrepresented or concealed several aspects of his conduct, including IP addresses, out of fear that being truthful would limit his ability to continue making wash trades. (*Id.* at 5–7, 14.) Mr. Gu also continued to trade even after Mr. Lee sent him information on wash trading and some platforms had closed his accounts. (*Id.* at 13–14, 20.) Finally, he made exorbitant profits—as much as "$430 in liquidity rebates … in less than a minute"—which were not just a side effect of good-faith trading. (*Id.* at 5.) For all of those

---

[2] The six factors also encompass the statutory requirements for third-tier civil penalties that the conduct involved "fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement" and resulted in or created a significant risk of "substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C); 78u(d)(3)(B)(iii); *Fierro*, 2024 WL 2292054, at *7 (requiring courts to consider "egregiousness," "scienter," and whether the misconduct "created substantial losses or the risk" thereof to others).

reasons, and as established at summary judgment, it is clear that Mr. Gu "willfully ignored obvious red flags about the propriety of his conduct" and acted with scienter. (*Id.* at 14.)

Mr. Gu's conduct was also repetitive. Even after being questioned by platforms, having accounts shut down, and receiving information on wash trading from Mr. Lee, Mr. Gu continued trading. (*Id.* at 20.) Mr. Gu characterizes his 11,000 trades as only two acts, arguing that the "two tranches of trading … should be deemed an 'isolated' violation." (Opp. at 17.) But the fact that the trades occurred in two waves does not lessen their numerosity. Mr. Gu relies on a case in which the court found that "two incidents" of tipping in under five months constituted an isolated incident. (*Id.* at 17–18 (citing *SEC. v. Clay Cap. Mgmt., LLC*, Civ. No. 11-5020, 2013 WL 5946989, at *8 (D.N.J. Nov. 6, 2013)).) That case's only similarity to this one is the number of months during which the conduct took place. Even if *Clay*'s two incidents of tipping each included more than one conversation, there is no way they came close to Mr. Gu's 11,000 trades. The number of instances of misconduct is far more important than the timespan over which they took place, and Mr. Gu's 11,000 trades clearly constitute repeated behavior.

The conduct's repetitiveness and the ample foundation for Mr. Gu's scienter, taken together, also support that the conduct was egregious. *See SEC v. Cooper*, 142 F. Supp. 3d 302, 320 (D.N.J. 2015) ("Defendants' securities violations were egregious, repeated, and carried a high degree of scienter.") The degree of scienter supports, for example, that Mr. Gu's conduct was "flagrant and deliberate," not "merely technical in nature," which courts have found supports egregiousness. *SEC v. Levoff*, Civ. No. 19-5536, 2024 WL 3272262, at *3 (D.N.J. July 2, 2024) (quoting *SEC v. Gunn*, No. 08-1013, 2010 WL 3359465, at *4 (N.D. Tex. Aug. 25, 2010)); *cf. Fierro*, 2024 WL 2292054, at *4, *8 (finding conduct not egregious and scienter lacking).

### B. Failure to Admit Wrongdoing

Mr. Gu's failure to admit wrongdoing also supports imposing a civil penalty. His opposition to this motion illustrates that failure. Despite this Court's clear finding on summary judgment to the contrary, for example, Mr. Gu argues that he did not misrepresent his trading experience to trading platforms. (Opp. at 4–5 & n.2.) Nowhere does he concede that his conduct was unlawful; he insists that he believed what he was doing was legal and created liquidity and that he was not obligated to truthfully answer the trading platforms' questions. (*Id.* at 13.) He concedes only that he "appreciates that *the Court has determined* that his options trading strategy violated the securities laws" (*id.* at 19 (emphasis added)), but he still seems to disagree with that conclusion, disputing that he had scienter. *See SEC v. Keener*, 644 F. Supp. 3d 1290, 1300 (S.D. Fla. 2022) (citation omitted) ("[Defendant]'s closest statement to an admission is that he 'accepts that his conduct was deemed wrongful.' But that it not a recognition of [his wrongdoing] ….").

It is not, as Mr. Gu suggests, his defense of the SEC action that grounds his failure to admit wrongdoing. (Opp. at 18–20.) Rather, it his is failure, now that summary judgment has been decided, to take responsibility for his illegal actions. *Fierro*, 2024 WL 2292054, at *2 (recognizing that "Defendants are entitled to vigorously defend against an SEC enforcement action," but still finding failure to admit wrongdoing when "Defendants have not offered any evidence … that they have recognized the wrongful nature of their conduct and will not commit future violations");

4

*Keener*, 644 F. Supp. 3d at 1300. Instead of taking the opportunity to do so in his opposition brief, Mr. Gu reargues facts that have already been decided.

### C. Substantial Loss or the Risk Thereof

Mr. Gu's conduct also imposed significant loss on other market participants. Most significantly, the exchanges lost over $1 million to Mr. Gu's liquidity rebates. (MSJ Op. at 2.) And while Mr. Gu himself was not charged take fees, which are charged by exchanges when someone accepts an offer to buy or sell a security (*id.*), those fees were instead charged to wholesalers. (D.E. 90-3 ¶ 15.) Some of Mr. Gu's non-marketable orders were also traded with other investors, and his activity "injected materially false and misleading information into the market and caused some investors to decide to trade with [him]." (MSJ Op. at 19.) This is sufficient to establish that Mr. Gu's activity created substantial loss or the risk thereof.

### D. Lack of Cooperation and Honesty with Authorities

Finally, Mr. Gu's lack of honest cooperation with authorities supports imposing a civil penalty. Most importantly on this point, Mr. Wechselberger submitted a declaration indicating that Mr. Gu asked him to lie to the SEC during its investigation (D.E. 90 at 12–13; D.E. 90-6 ¶ 7), which Mr. Gu does not dispute (*see* Opp. at 19 (mischaracterizing SEC's lack of cooperation argument as based "merely" on Mr. Gu's defense of the SEC action)). This conduct is highly indicative of dishonesty and refusal to cooperate, and it supports the imposition of a civil penalty here.

Overall, a civil penalty is also necessary here to serve a deterrent purpose. Mr. Gu continued his scheme after Mr. Lee sent him information on wash trading and after trading platforms questioned him and closed his accounts. Clearly, something more severe is needed. Mr. Gu's argument that the costs and stress of this lawsuit are sufficient to deter him (*id.* at 1, 21)[3] is without merit. All defendants against whom civil penalties have been imposed have also paid for and endured lawsuits to get to that point—holding that the lawsuit itself is a sufficient deterrent would nullify the statute providing for civil penalties. It would also fail to serve a general deterrent purpose for the public. Mr. Gu's argument that the requested penalty will impose an "insurmountable financial burden on him" (*id.* at 21), is also unconvincing. He is self-employed and reports an annual income of $200,000–$400,000. (*Id.*) The requested penalty is also not as large as it could be under the statutes, which provide for a penalty up to the amount of a defendant's gross pecuniary gain. This lawsuit and its consequences will, and should, for the purposes of deterrence, impose a burden, but it is not insurmountable.

---

[3] Mr. Gu's argument that a civil penalty should not be imposed because he is not employed in the securities industry (*id.* at 20) is misplaced. Courts consider employment outside of the industry when determining whether to impose an injunction, *Fierro*, 2024 WL 2292054, at *1, *3, a remedy that Mr. Gu does not oppose in this matter.

5

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion is **GRANTED**.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       André M. Espinosa, U.S.M.J.